The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. On 14 August 1996, an employment relationship existed between plaintiff and defendant.
2. On 14 August 1996, plaintiff sustained an admittedly compensable injury by accident.
3. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
4. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
5. Defendant is a duly-qualified self-insured employer.
6. Plaintiffs average weekly wage on the date of the injury giving rise to this claim will be determined from a Form 22 wage chart.
7. In addition to the deposition transcript of Dr. Navasero and the deposition exhibits, the parties stipulated into evidence in this matter stipulated exhibit one, a packet of thirty-three medical records. Subsequent to the hearing before the Deputy Commissioner, fifty-one additional pages of medical records were received into evidence in this matter.
8. The issue to be determined is to what indemnity and medical benefits is plaintiff entitled as a result of her injury by accident of 14 August 1997.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in this matter, plaintiff was forty years old. Plaintiff finished the tenth grade and later obtained a G.E.D. Plaintiffs employment history prior to becoming employed by defendant consisted primarily of cooking and cleaning.
2. Plaintiff was hired by defendant in March 1995 to work on the cleanup crew. In this capacity plaintiff cleaned and performed many tasks, including cutting grass and shoveling sawdust.
3. On 14 August 1996, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment when a forklift operator ran into a pile of wood. The wood struck plaintiff in the arm and across both shins, and knocked her to the floor. Defendant accepted this claim as a "medical-only claim.
4. That same day plaintiff reported for treatment at Columbia Cape Fear Memorial Hospital with contusions and superficial abrasions on her left forearm and both lower legs. In a follow-up appointment on 19 August 1996, plaintiff indicated that her right shin was still painful, but her left leg and left arm were improved. The physician noted that plaintiffs tibial contusions and abrasions were "healing quite well, and that plaintiff was primarily complaining of headaches. After both the 14 August 1996 and 19 August 1996 appointments, plaintiff was given lifting restrictions and was told to limit standing and walking.
5. On 28 August 1996, plaintiff returned to Columbia Cape Fear Memorial Hospital, and at this appointment plaintiff was found to be "doing very well with "no specific complaints, and with improved bilateral tibial contusions and abrasions The physician released plaintiff from her care and indicated that plaintiff was capable of continuing full duty work without limitations.
6. On 10 September 1996, plaintiff presented to New Hanover Regional Medical Center with complaints of a headache that she related to the injury by accident of 14 August 1996. At this evaluation plaintiff reported for the first time that she struck her head and lost consciousness when the 14 August 1996 injury by accident occurred. Because of her current headache, a CT scan was performed on plaintiffs brain, the results of which were normal.
7. There are no medical records to show that plaintiff treated with any medical care provider following the September 1996 brain scan for either headaches or arm or leg pain stemming from the 14 August 1996 injury by accident until more than a year later. On 28 October 1997, plaintiff presented to New Hanover Regional Medical Center with complaints of left knee pain. Plaintiff related this pain to falling on her left knee on 14 August 1996 when she was hit by the pile of wood. Further, she reported that the pain had progressively worsened.
8. Plaintiff began treating at Coastal Orthopaedics, where an MRI was ultimately performed. The MRI showed a tear of the anterior lateral meniscal with chondromalacia of the left patella. Accordingly, Dr. Donald G. Getz performed an arthroscopy on plaintiffs left knee on 25 March 1998. Following the surgery plaintiff underwent physical therapy and on 8 June 1998 Dr. Getz released plaintiff to return to work.
9. By letter dated 28 January 1999, Dr. Getz indicated that the 14 August 1996 injury by accident "significantly contributed to her left knee injury. Dr. Getz indicated that plaintiff was capable of working full duty without restrictions and that she has retained no permanent impairment to her left knee.
10. A review of plaintiffs past medical records reveals that she underwent treatment on her left knee prior to the 14 August 1996 injury by accident. Plaintiff was seen at New Hanover Memorial Hospital on 30 July 1988 for complaints of left knee pain and swelling following a fall on cement which resulted in her landing on her left knee. In addition, plaintiff was seen in the emergency room of New Hanover Regional Medical Center on 14 June 1994 with complaints of left knee pain and swelling. Previous medical records also reveal that plaintiff has been treated a number of times for complaints of headaches.
11. On 15 October 1996, plaintiff was laid off by defendant. Thereafter, plaintiff was out of work for six months. However, in April 1997 plaintiff returned to work as a cook for Liberty Common Nursing Home, where she worked for nine months. As of the date of the hearing before the Deputy Commissioner, plaintiff was not regularly employed but occasionally assisted a neighbor cleaning apartment complexes.
12. Plaintiffs contentions that her headaches and her left knee problems which ultimately resulted in an arthroscopic procedure are not deemed credible, despite Dr. Getzs contrary opinion. This finding is made in part based on the following facts:
a.) plaintiff presented for medical treatment on the day of the 14 August 1996 injury by accident with superficial abrasions and contusions to her shins. There is no mention in the medical records immediately following her injury by accident that the injuries to plaintiffs legs were of a more severe nature;
b.) plaintiff did not begin complaining of left knee pain until fourteen months subsequent to the 14 August 1996 injury by accident;
c.) plaintiff has been treated several times prior to 14 August 1996 for complaints concerning her left knee that were quite similar to the complaints made by plaintiff in September 1997 that she related to the 14 August 1996 injury by accident;
d.) plaintiff began to complain of headaches shortly after the 14 August 1996 injury by accident; however, it was not until almost a month later, on 10 September 1996, when plaintiff first contended that she struck her head and lost consciousness as a result of the 14 August 1996 injury by accident; and
e.) plaintiff has been medically treated a number of times to her 14 August 1996 for complaints of headaches.
13. There is insufficient evidence of record from which to prove by its greater weight that plaintiffs complaints of left knee problems that resulted in surgical intervention and plaintiffs headaches were causally related to her 14 August 1996 injury by accident.
14. There is insufficient evidence of record from which to prove by its greater weight that plaintiff sustained any disability either temporary or permanent in nature as a result of her 14 August 1996 injury by accident.
***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on 14 August 1996. N.C.G.S.97-2(6).
2. However, plaintiff missed no time from work as a result of the compensable 14 August 1996 injury by accident, and she was assigned no permanent partial impairment as a result of her compensable 14 August 1996 injury by accident. Therefore, plaintiff was not disabled within the meaning of the Workers Compensation Act due to her 14 August 1996 injury by accident. N.C.G.S. 97-2(9), 97-29, 97-30, and 97-31.
3. Furthermore, plaintiffs left knee problems and headaches were not causally related to her compensable 14 August 1996 injury by accident. N.C. Gen. Stat. 97-2(6).
4. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendant provide for all reasonably necessary medical treatment arising out of the compensable 14 August 1996 injury by accident as long as it tends to effect a cure provide relief or lessen the period of disability. However, plaintiff is entitled to no indemnity benefits as a result of the compensable 14 August 1996 injury by accident. N.C.G.S. 97-2(19), 97-2(6), 97-29, and 97-25.1.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendant shall provide for all reasonable and necessary medical expenses that were causally related to plaintiffs compensable 14 August 1996 injury by accident and which tend to effect a cure, provide relief or lessen the period of disability.
2. Plaintiffs claim for further workers compensation benefits in this matter is hereby, and the same shall be, Denied.
3. Defendant shall bear the costs of this proceeding.
This the ___ day of August 2000.
S/________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/bjp